Tuiusey, J.,
delivered tlie opinion of the court:
The complainant was the wife of Erasmus S. Crawford, who died February 7, 1865. On June 18, 1856, the Aetna Insurance Company issued a policy of insurance to complainant, upon the life of her husband, for the consideration of the annual premium of one hundred and ninety-two dollars, the sum of assurance being six thousand dollars. At that time the husband was about forty years of age.
The premiums were regularly paid up to and including the one falling due June 18, 1861.
On October 19, 185Y, a similar policy was obtained from the Manhattan Insurance Company for the sum of four thousand dollars, at the annual premium of1 one hundred and thirty-five 66-100 dollars.
The premiums were paid up to and including that falling due October 19, 1860. <
At the time of the issuance of the policies complainant was a citizen of Vicksburg, Miss., but in 1859, she removed *330 witli ber husband to "Memphis, Tenn., where he remained until bis death, and where complainant still lives.
During tha whole time the insurance company first named was an institution in Connecticut, and the second in New York.
After the close of the war demands were made upon 1he defendants, respectively, for the amounts of the insurance, Avhieh were refused, and these bills were filed, the first on April 2, and the second on October 19, 1872, asking that defendants be required to pay the full insurance, or (if that cannot be granted), the amounts of the premiums paid, with interest, and for general relief.
To each of these bills there is a demurrer, which was overruled by the chancellor.
Complainant, for whose sole and separate use the policies were taken, insists she is entitled to the full amounts, ■with interest. Tha defendants insist she is entitled to nothing, or, if to anything, only to the equitable value of the policies at the time of the death. The questions arise for the first time in Tennessee. ■
We are furnished witli several state and some federal authorities, in which there is a decided conflict of opinion, even the decisions of the supreme court of the United States not being uniform.
For complainant, it is insisted she was relieved from the regular payment of the premiums after the breaking out of the war, the parties bearing to each other the relation of enemies, by reason whereof the contracts were suspended and the stipulations in the policies making them void for a failure to pay on or before the day, made unavailable for the defendants; that the insured dying, the war flagrant, the liability of defendants was fixed.
On the other hand, it is insisted the failure to pay at the day renders the policy void, and forfeited to the companies the premiums already paid, unless, perhaps, to the extent-of the equitable value of the policies at the time, as already indicated. Defendants claim that the proclamation of the *331 president of August 18th, 1861, declaring certain, states, except such parts as may maintain a loyal adhesion to the union and constitution, or may be from time to time occupied and controlled by forces of the United States, in a state of insurrection, and inhibiting all commercial intercourse between the inhabitants thereof, with the exceptions aforesaid, and the citizens of the other' states, etc., relieved the parties of the enemy relation, so far as to give to complainant the right and make, it her duty (if the contract rvas merely suspended) to pay the premiums falling due between the date of this proclamation and that of March 31, 1863, revoking the exceptions of the first, and having failed to do so, the policies and paid-up premiums were forfeited by the terms of the contracts of insurance.
lieturning to the other propositions, we find highly respectable authorities each way, and so can only be materially benefited by their reasoning. The safe rule, as well as the most equitable one, seems to be to place the parties as nearly in statu quo as possible.
The contracts of insurance Avere suspended by the war, and before its close made impossible of revivor by the act of God, and not by the acts or negligence of the parties; they were entirely free from fault. Both, so far as we can see, intended to carry out in good faith their respective under takings, and were prevented by means not their own, and entirely without their control.
By the contract and the payment of the first premiums, the complainant purchased the right, not defeasible by the defendants and without regard to the changed condition of health or age of the insured, of keeping the insurance alive for the stipulated annual premiums, and it was the duty of the defendants to abide the contract, and receive the premiums. These obligations were observed and performed as long as it was possible to the parties; under this condition of their surroundings, what are the equities of the parties? "We do not think the defendants are entitled to retain the full amounts of the premiums paid, but they *332 are entitled to compensations for the risks during the years the policies were not suspended, and we can conpeiv© no better' rule for the ascertainment, than to hold as we do, that complainant is entitled to the value of paid-up policies on the days the premiums were, first omitted to be paid, with interest. The causes are referred to the clerk of this court to ascertain and report such amounts.
The proclamation of the president did not do away with the enemy relations of the parties. By the act of secession and the declaration of war, they had already become citizens of opposing belligerent powers or governments; their contracts had been suspended. Agents of the defendants had been withdrawn from the seceding states, and if they had not been, by the laws of this state as holden by this court, the war absolutely vacated their powers to act as agents. The defendants gave no notice of the falling due of premiums, according to their universal custom in such cases', nor did they make any effort to collect. Besides, the proclamation was not definite as to the direction of the privileges allowed by it. Its continuance was necessarily uncertain, by reason of the fluctuating fortunes of war, and, if unaffected by these, it was, at the will of the president, revocable, and was revoked more than two years before hostilities ceased, by the proclamation of March, 1863, prohibiting all commercial intercourse between the states inhabited by the parties, respectively.
The proclamation of the president must be confined to its intended and legitimate objects — that is, to the transactions having their inception after its issuance, and to be continued until such time as the president saw proper to put an end to them.
The proclamation was meant to cover and protect such commercial intercourse as would, in some way, promote the public welfare, and not to revive contracts abstractly and exclusively individual, made before the separation of the states, and .the war consequent thereon. The parties *333 to contracts like these must be governed and controlled by fixed law, and not by the simple will of the executive acting each day upon Ms conviction of wliat is best for the government lie represents in times of a most stupendous war, the events of to-day suggesting one^ course, those of to-morrow the opposite.
A little reflection points out the utter confusion and contradictions and insuperable difficulties that would result from a rule different to the one we indicate.
The decree is affirmed, with the order of reference suggested.